UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEVIN SEGURA, an individual, dba<br>SHINY VINYL MUSIC,<br><br>                Plaintiff,<br><br>    v.<br><br>SOFA ENTERTAINMENT, INC., a<br>California corporation; DIRECT HOLDINGS<br>AMERICA INC., a Delaware corporation,<br>dba STARVISTA LIVE and TIMELIFE,<br><br>                Defendants. | Case No. 3:16-cv-0938-AC<br><br>AMENDED[1]<br>OPINION AND ORDER |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Kevin T. Segura ("Segura") filed suit for copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, against defendants Direct Holdings America, Inc., dba StarVista Live and TimeLife ("Direct Holdings") and Sofa Entertainment, Inc. ("SOFA").

Segura seeks to recover statutory damages in the amount of $150,000 and attorney fees due

---

[1] The court issues this Amended Opinion and Order to correct typographical and formatting errors. The analysis and conclusions are unchanged.

to SOFA's alleged copyright infringement of a musical interlude. SOFA moves for partial summary judgment on the issue of statutory damages and attorney fees, claiming Section 412 bars Segura's recovery. 17 U.S.C. § 412. The court grants SOFA's motion because the undisputed facts show Section 412 bars Segura's recovery for statutory damages and attorney fees.[2]

*Background*

In September 1956, the Ed Sullivan Show aired a performance by Elvis Presley. A band called The Vagabonds played live music prior to Presley's performance. Before and after The Vagabonds' live performance on the Ed Sullivan Show, a brief fanfare played in the background. The fanfare, the "Vagabonds Play-On," and the "Vagabonds Play-Off," is the subject of Segura's claim.

In 2006, SOFA prepared and released three 60-minute Ed Sullivan Show episodes ("the SOFA Video Compilation.") The September 1956 Ed Sullivan Show was one of the episodes included in the complation. The Vagabonds Play-On and the Vagabonds Play-Off also were included in that episode.

While performing restoration work on the SOFA Video Compilation for its 2006 release, Segura heard the Vagabonds Play-On and the Vagabonds Play-Off and decided he liked the music. Segura registered a copyright for the Vagabonds Play-On and the Vagabonds Play-Off on March 7, 2012. (Def. Repl. at 2.) Segura approached SOFA regarding its copyright infringement for the unlicensed use of the Vagabonds Play-On and the Vagabonds Play-Off in the 2006 SOFA Video Compilation. Ultimately, on July 29, 2012, SOFA and Segura entered into a retroactive, non-

---

[2] The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 631(c)(1).

exclusive license agreement, spanning May 10, 2007 through December 31, 2012, for its limited use of the Vagabonds Play-On and the Vagabonds Play-Off in the SOFA Video Compilation.

In 2014, Direct Holdings and SOFA re-released the same September 1956 episode ("the TimeLife Video Compilation"). The Vagabonds Play-Off, but not the Vagabonds Play-On, was included in that episode. Segura brought an action for willful copyright infringement under 17 U.S.C. § 101 *et seq.*, alleging SOFA's 2014 use of the Vagabonds Play-Off infringed on his copyright. Defendant SOFA moved for partial summary judgment, citing the Copyright Act, 17 U.S.C. § 412, on Segura's request for statutory damages and attorney fees.

*Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

When a motion for summary judgment is unopposed, the court may grant the motion only if the movant's papers are sufficient to support the motion and do not on their face reveal a genuine

issue of material fact. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wines*, 533 F.2d 429, 439 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

SOFA seeks summary judgment on Segura's claim for statutory damages and attorney fees under the Copyright Act. SOFA argues these remedies are unavailable to Segura because he failed to promptly register his copyright.

When alleging copyright infringement, a copyright owner may choose to seek statutory

damages instead of actual damages and additional profits. 17 U.S.C. § 504(a) & (c). Section 505 allows courts to award reasonable attorney fees to the prevailing party in a copyright action. 17 U.S.C. § 505. For Segura to recover statutory damages or attorney fees, he must show Section 412 of the Copyright Act does not bar such relief.

Section 412 was enacted to provide copyright owners with an incentive to register their copyrights promptly and to encourage potential infringers to check the Copyright Office national database prior to using another's creative material. *Derek Andrews, Inc. v. Poof Apparel*, 528 F.3d 696, 900 (9th Cir. 2008) (citing H.R. Rep. No. 94–1476, at 158 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5774). Section 412 states, in part:

> No award of statutory damage or of attorney's fees, as provided by sections 504 and 505, shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

On the specific issue of post-registration copyright infringement when the initial act of infringement occurred prior to the effective copyright-registration date, the Ninth Circuit held the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412. *Derek Andrew*, 528 F.3d at 701. Therefore, where a pre-registration and post-registration infringement are at issue, the court must determine whether the post-registration distributions were an ongoing continuation of the initial pre-registration infringement. *Id.*

I. Post-registration Infringement.

For SOFA's 2006 post-registration infringement, Section 412 bars statutory damages or

attorney fees. *Derek Andrew*, 528 F.3d at 698. Courts considering post-registration infringement consistently apply a bright-line approach to determine whether a plaintiff may recover statutory damages and attorney fees. For Segura's claim to survive summary judgment, Segura must factually establish that SOFA's 2014 post-registration infringement either is not a continuation of the pre-registration infringement, or is legally different. *Id.*; *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003).

    *A. Whether Post-registration Infringement Was Continuous*.

Infringement need not occur without any cessation to be "continuous" under Section 412. As long as some infringement occurred pre-registration, courts have held post-registration infringement is continuous even with periods of a few months to more than two years between infringements. *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No 16CV724 LTS, 2016 WL 4126543, at *3 (S.D.N.Y. Aug. 2, 2016); *U2 Home Entm't., Inc. v. Hong Wel Int'l Trading, Inc.*, No 04 CIV.6189 JFK, 2008 WL 3906889, at *15 (S.D.N.Y. Aug 21, 2008). However, infringement is not continuous if infringement ceased for an appreciable duration of time. Whether the duration of the cessation is material depends on the facts of the case and the relevant case law. Previous cases have addressed similar factual situations where similar infringing works were produced before registration and infringing activity continued after registration.

In *Mason v. Montgomery Data Inc.*, 967 F.2d 135 (5th Cir. 1992), the Fifth Circuit addressed infringement of 223 real-estate maps. Plaintiff registered one map before defendant's alleged infringements, but registered the remaining 232 maps after defendant's alleged infringements occurred. The court barred § 412 statutory remedies and attorney fees for the plaintiff for all 232 of the defendants' post-registration infringements, but not the single pre-registration map, because the

alleged infringement commenced prior to registration. *Id.* at 143.

The Second Circuit, in *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150 (2d Cir. 2007), explored the continuing-infringement doctrine under Section 104A(d)(4) of the Copyright Act. In *Troll*, defendant's company knowingly infringed on plaintiff's copyright after a cessation period of approximately nine years. The court interpreted Section 104A(d)(4) by using the legislative history of Section 412 to reason that Section 412 suggests post-registration infringement will not be deemed to have commenced before registration if the infringing activity ceased for an "appreciable duration of time." *Id.* at 158–59. In other words, for the purposes of reliance parties in the context of Section 104A(d)(4), post-registration infringement is not continuous if interrupted by a long period of time.

The *Troll* decision was distinguished by *U2 Home Entertainment*, 2008 WL 3906889, at *15. In *U2 Home Entertainment*, an post-registration infringing television program aired after a pre-registration infringement occurred. The court dismissed plaintiff's claims for statutory damages and attorney fees because the holding in *Troll* had no bearing on the application of Section 412 in that case, and the time between infringements in *U2 Home Entertainment* was shorter than in *Troll*, "ranging from eight days to slightly more than two years." *Id.*

The Ninth Circuit, in *Derek Andrews*, held that plaintiff could not recover statutory damages for post-registration infringing clothing hang tags because infringement commenced prior to registration. *Derek Andrews*, 528 F.3d at 700–01. The court limited plaintiff's recovery even though the infringing hang tag was used on different merchandise before and after registration, because infringement was continuous and there was no legally significant difference between the pre- and post-registration infringement. *Id.*

Courts have consistently applied Section 412 as a bright-line rule in situations where any

infringement occurs before registration. What the courts have not defined is the in minimum length of time necessary to constitute cessation of infringement between pre- and post-copyright registration, such that the post-registration infringement is not a continuation of the pre-registration infringement. *See Solid Oak*, 2016 WL 4126543, at *2–3. Nonetheless, the cases that have addressed the cessation question make clear that Segura cannot use the exception here to support his claim for Section 412 remedies.

Here, SOFA's infringement is continuous. SOFA's infringement began in 2006, well before Segura registered his copyright, and continued into 2012. In July 2012, Segura and SOFA entered into an agreement, the result of which stopped SOFA's unauthorized use of the music for approximately two years, at which point SOFA issued the 2014 Video Compilation. Even if the holding in *Troll* is relevant to Section 412, the court can find only one case allowing Section 412 remedies because of some cessation of infringement. *Rosen v. Netfronts, Inc.*, No. CV 12-658 CAS FFMX, 2013 WL 3467205, at *3 (C.D. Cal. July 9, 2013) (five-year cessation). Instead, courts consistently have found a series of infringing acts to be continuous despite longer periods of time where infringement ceased. *See, e.g.*, *Solid Oak*, 2016 WL 4126543, at *3 (one year); *New Name Inc. v. Walt Disney Co.*, No. CV 07-5034 PA, 2008 WL 5587487, at *3 (seven months); *U2 Home*, 2008 WL 3906889, at *15 (more than two years).

The cessation at issue here is within the periods of cessation considered in *U2 Home*, and far shorter than the five-year and nine-year periods considered in *Rosen* and *Troll*. The two-year gap alone does not constitute an appreciable duration of time where infringement ceased for the purposes of Section 412. Therefore, the period between SOFA's alleged infringements between 2012 and 2014 is continuous.

*B. Whether Pre- and Post-registration Infringement Are Legally Different.*

Segura focuses part of his argument on the "same work" analysis. The federal Copyright Act does not define the term "work." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 768–69 (11th Cir. 1996). The circuits that have defined "work" have held that "separate copyrights are not distinct 'works' unless they can 'live their own copyright life.'" *Gamma Audio & Video, Inc. v. Ean–Chea*, 11 F.3d 1106, 1116 (1st Cir. 1993); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990); *Robert Stigwood Group, Ltd. v. o'Reilly*, 530 F.2d 1096, 1105 (2d Cir. 1976). This test focuses on whether each expression has an independent economic value and is, in itself, viable. *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996). When the same defendant infringes on the same protected work in the same manner as it did prior to the work's registration, the post-registration infringement constitutes the continuation of a series of ongoing infringements. *Solid Oak*, 2016 WL 4126543, at *3.

In *Solid Oak*, the plaintiff held exclusive licenses for some copyrighted tattoo designs. *Solid Oak*, 2016 WL 4126543, at *1. The defendant, a video-game developer, produced a professional-basketball video-game series that used the copyrighted tattoo designs when replicating professional-basketball players in the game. *Id.* The tattoo designs appeared in video games released annually, beginning in 2013. *Id.* The plaintiff registered the copyrights in 2015. *Id.* A few months later, defendant released another video game featuring the copyrighted tattoo designs, in a manner "more individualized than in prior versions" of the video game. *Id.* at *2. The *Solid Oak* court held that the updated tattoo designs in the latest version of the video game were a "continuation of a series of ongoing infringements" because the pre- and post-registration games were part of the same series and used the same copyrighted designs. *Id.* at *3. The "updates to the title and visual and graphical

improvements" were insufficient to distinguish the post-registration game from its predecessors. *Id.*

Applying that test to these facts, the pre-registration expression of the Vagabonds Play-Off is virtually identical to the post-registration Vagabonds Play-Off, and the two have no independent, viable economic value when compared with each other. As in *Solid Oak*, the TimeLife Video Compilation and SOFA Video Compilation use the same copyrighted material in substantially the same way. *See Solid Oak*, 2016 WL 4126543, at *3. Nor do the differences in the episodes included in the Compilations make each Compilation a separate infringement. *See Irwin v. ZDF Enterprises GmbH*, No. 04 CIV. 8027 (RWS), 2006 WL 374960, at *6 (S.D.N.Y. Feb. 16, 2006) (two different television programs using the same two minutes of music were not separate infringements). Accordingly, SOFA's use of the music and the alleged infringement are continuous in the sense that it is the same work in both the pre- and post-registration expressions.

II. Whether a License Creates an Exception to Section 412.

Segura argues that the retroactive license agreement made SOFA's pre-registration infringement separate and distinct from SOFA's post-registration infringement. Neither party cites to any authority supporting the conclusion that a license does or does not create an exception to the bright-line application of Section 412. The court has found no case that has considered the effect of a license on Section 412 continuous-infringement analysis.

In this case, the intervening, retroactively applied license does not create an exception to the bright-line application of Section 412. Prompt copyright registration is one of the main purposes of Section 412. Segura became aware of the musical selection only after performing restoration work for SOFA in 2006. Segura then waited six years, to 2012, to register a copyright on the musical selection. Allowing Segura to recover statutory damages and attorney fees here would be contrary

to the purpose of Section 412.

Segura argues that the equally important second purpose of Section 412, incentivizing potential infringers to regularly check the copyright registry, in combination with the intervening license, should allow him to recover statutory damages and attorney fees. Factually, even if SOFA checked the copyright registry daily from the state date of the SOFA Video Compilation in 2006, they could not have known they were infringing on Segura's copyright at least until it was registered on March 7, 2012, because Segura's registration did not exist until that date. Segura's argument is contrary to previous applications of and the purpose underlying Section 412.

Therefore, based on these facts, a license does not create an exception to the bright-line application of Section 412's bar to statutory damages and attorney fees when pre- and post-registration infringement occurs continuously.

*Conclusion*

For the reasons stated above, SOFA's motion for summary judgment (ECF No. 24) is GRANTED.

IT IS SO ORDERED.

DATED this 9th day of June, 2017.

s/ John V. Acosta<br>
JOHN V. ACOSTA<br>
United States Magistrate Judge